(169 App. Div. 469)

## In re NAPOLIS.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

1. ATTORNEY AND CLIENT ⬤⟿42—FALSE STATEMENTS—PROFESSIONAL MISCONDUCT—PUNISHMENT.

Where an attorney wrote letters to a client, asserting the disposition of certain moneys by the attorney in such a way as to constitute a protection to the client against charges of appropriation of money, such letters being written in entire good faith, in the belief that the charges were wholly false, his conduct calls for no greater discipline than the assertion by the Supreme Court of its condemnation of any false statements made by a member of the profession for any purpose.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ⬤⟿42.]

2. ATTORNEY AND CLIENT ⬤⟿38—AFFIDAVIT OVER TELEPHONE—PROFESSIONAL MISCONDUCT—PUNISHMENT.

Where an attorney, without personal or pecuniary advantage and at the request of a client, takes the affidavit of another over the telephone, but who is young and inexperienced, and acting under an enthusiastic belief in the client and his benevolent activities, and without any possible motive to commit the offense, the disciplining imposed by the court upon him will be confined to severe censure.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. ⬤⟿38.]

3. NOTARIES ⬤⟿6—TAKING AFFIDAVITS OVER TELEPHONE—PROFESSIONAL MISCONDUCT.

Ordinarily the taking of acknowledgments or affidavits by notaries without the presence of party sworn will be treated as serious professional misconduct.

[Ed. Note.—For other cases, see Notaries, Cent. Dig. § 12½; Dec. Dig. ⬤⟿6.]

Proceeding by the Bar Association of New York City against Edward S. Napolis, an attorney, for professional misconduct. Respondent censured.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City, for petitioner.
Wahle & Kringel, of New York City, for respondent.

INGRAHAM, P. J. [1] These charges grew out of certain transactions of one Pecorini. Respondent was a friend of Pecorini, who was engaged in publishing an Italian newspaper in the city of New York and working among the Italians who were residents of the city. Pecorini had been accused of receiving money for Italians and appropriating it to his own use, when respondent, to shield Pecorini from such charges, wrote to Pecorini several letters, which evidently were intended for publication—one stating:

"I have had two checks ready since July 15th, and if you had only made up your mind some time ago as to the best way to send this money, so that it could surely reach the interested parties, they might have had it a long time ago."

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

And another stating:

"The check for $300 which I received from you on July 15th was deposited by me on September 10th."

As a matter of fact, the respondent had not had two checks ready to send to these people since July 15th, and did not receive Pecorini's check on July 15th, but the day the first letter was written, on September 10th, Pecorini gave to the respondent his check for $300, which was afterwards collected, and it appears that the money was subsequently transmitted to those entitled to it.

Respondent makes a full and complete statement of his relations with Pecorini, and, while admitting that the statements contained in these letters were false, expresses his regret that he had written them, stating that they were written to protect Pecorini from what he then believed to be false charges against him. The respondent apparently had no relation of attorney and client with any of those interested in this transaction. He apparently had the utmost confidence in Pecorini, and believed him to be a sincere and well-meaning man, devoted to assisting his fellow countrymen in this country. There was no motive, except to endeavor to protect Pecorini from what he considered an unjust and malicious attack upon him. While the respondent is to be censured for writing falsehood in any letter, as he freely admits his fault and expresses regret therefor, the court would hardly be justified in proceeding to discipline him further on this charge than to express its condemnation of any statement by a member of the profession that was not true, for the purpose of protecting another from charges, even when he believed the charges were malicious and false, or for any other purpose.

[2] The other charge which requires notice is one arising from the fact that Pecorini brought to the respondent an affidavit purporting to be made by one La Spina, and which was signed by him. The affidavit was not entitled in any legal proceeding, and it did not appear for what use it was intended. Pecorini requested the respondent, who was then a notary public, to affix his signature to the jurat. Respondent called La Spina on the telephone, recognized La Spina's voice, and swore him to the affidavit over the telephone, and then affixed his name and official title to the jurat. This affidavit does not appear to have been intended to have been used in any judicial or legal proceeding, and, so far as appears, was not so used. Of course, such a method of administering an oath is entirely illegal and unauthorized, and respondent in acting as he did was guilty of a misdemeanor; but he has also submitted a full and frank answer to this charge, has admitted the offense, and has not sought to exonerate himself by false statements to the court, or by a denial of any of the facts stated. The offense is a serious one, and receives the severe condemnation of the court. It is inconceivable that a member of the profession should so far forget his duty to the profession and to the public as to violate his duty and commit an offense against the criminal law. Of course, the respondent was not responsible for the truth of the facts stated in this affidavit. He now says, and apparently with truthfulness, that he did not read the affidavit, and that his sole knowledge of its con-

tents was what Pecorini told him in relation to it. He admits that statements made in this affidavit are false, and if there was real ground for believing that the respondent knew that the statements were false, there would be a situation presented requiring discipline; but there is nothing in these charges ·or the facts as presented which would justify a finding that the defendant had any personal advantage, pecuniary or otherwise, in his relations with Pecorini, or which induced him to place himself in the position in which he is in relation to these transactions.

[3] The court again wishes to express its condemnation of the acts of notaries taking acknowledgments or affidavits without the presence of the party whose acknowledgment is taken or the affiant, and that it will treat as serious professional misconduct the act of any notary thus violating his official duty. In this case, however, considering the youth and inexperience of the respondent, his enthusiastic belief in the good work that Pecorini was doing, his confidence in the man himself, the absence of any possible motive that would lead him to commit the offenses with which he is charged, and his full and frank disclosures to the court, the court will confine its discipline to a severe censure of the respondent for the acts specified, without proceeding to further discipline. All concur.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.